# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL R. MALOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:13-00877-CV-W-NKL |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Michael R. Malott appeals the Commissioner of Social Security's final decision denying his application for disability insurance benefits and supplemental security income, 42 U.S. C. § 401, *et seq.,* and § 1381, *et seq*. The Commissioner's decision is AFFIRMED.

**I.  Background**

Malott was previously found disabled, effective April 25, 2007 through September 6, 2009, due to a kidney transplant. He filed his current application in November 2010, alleging he became disabled May 1, 2010 due to kidney transplants, and depression, anxiety, arthritis, diabetes, high blood pressure, high cholesterol, cardiovascular disease, attention deficit-hyperactivity disorder, pulmonary embolism, and drug addiction.

Malott had kidney transplants in 1989 and 2007. He has a history of coronary artery disease for which he underwent a stent placement to his right coronary artery in November 2009. Malott had numerous emergency room visits in 2010, 2011, and January 2012 for complaints of chest pain. The chest pain was related to anxiety not cardiac disease.

Malott was working for Sprint at the time of his second kidney transplant, and lost that job in 2008, a year after the transplant. In 2009, he was working for a construction company. In

October 2009, a treating physician noted Malott had major depressive disorder in partial remission. [Tr. 272.] In February 2010, the same physician noted Malott had been very busy with work, and his mood deteriorated when he ran out of medications. [Tr. 269.] Malott had counseling from April 2008 through June 2010 on a monthly or twice-monthly basis. [Tr. 452-522.] In early 2010, he was working long hours, and experiencing increased psychological symptoms due to financial and relationship issues. [Tr. 452-460.] In May 2010, Malott was working for a lawn care business, but told his therapist that he lost the job because he was not bringing in enough business. [Tr. 453.] That was the last time he was employed. But he reported in counseling sessions in May and June 2010 that he was happy with a new personal relationship, and was interested in attending nursing school. [Tr. 453.]

Malott had treatment and medication management at ReDiscover from July to December 2010. [Tr. 761-833; 868-71; 939-1053; 1417-1564.] His therapist was assisting him in applying for programs to pay for his medications, but he was unavailable for an appointment due to caring for his girlfriend's baby. [Tr. 870.]

Malott went to the emergency room in March 2011 with complaints of suicidal ideation. [Tr. 1149-52, 1158-1270; 1282-89.] At an April 2011 evaluation for follow up of his kidney transplant, Malott reported that in August 2010 he stopped taking all of his medications, including his anti-rejection medications. [Tr. 916.] The examiner noted Malott's physical and mental conditions were stable on medication. [Tr. 918.] In July 2011, Malott reported to ReDiscover with complaints that he was "extremely depressed," triggered by the foreclosure of his house. [Tr. 945-784.] He missed therapy sessions due to responsibilities of caring for his girlfriend's four children. [Tr. 980.]

Dr. Latha Nair, a treating physician, completed a mental RFC assessment of Malott in March 2012. [Tr. 1614-16.] She opined that Malott would have various moderate, marked and

2

extreme limitations. [Tr. 1614-15.] More specifically, she opined that he had marked restrictions in the abilities to understand and remember detailed instructions; work in coordination with others; make simple work related decisions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals. [*Id.*] She opined that he would have extreme limitations in ability to complete a normal work day and week without interruption from psychological symptoms and maintain a consistent pace; respond appropriately to workplace changes; and travel in unfamiliar places or use public transportation. [*Id.*] She estimated Malott's limitations began in 2009. [Tr. 1616.] She also opined that Malott would have moderate to marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and marked episodes of decompensation. [Tr. 1617.]

At the administrative hearing in April 2012, Malott, who was 46 years old at the time, testified that he had a Bachelor of Science degree. [Tr. 43-44.] He lived with his girlfriend and her four children, ages two, seven, eight, and eleven. [Tr. 49.] His girlfriend has also filed for disability. [Tr. 1473.] He testified that his girlfriend did most cooking, cleaning and laundry [Tr. 50-51], though in his application materials, he stated that he did household chores [Tr. 144]. Malott last worked in May 2010, and said he was terminated due to being late to work and absent, which he attributed to his depression, anxiety and "illness." [Tr. 44.] Malott testified that his depression made him anti-social; he stayed in bed five days per week and watched television; had three to four periods of mania a month due to bipolar disorder; he had panic and anxiety attacks two to three times per week with chest pain; he had been in the hospital 20 times over the last three or four months due to complications from kidney transplants, heart issues, and pulmonary embolism; his anti-rejection and other medication for high blood pressure and diabetes made him lethargic and tired; he had chest pain due to anxiety and coronary artery

disease; he had neuropathy due to diabetes; and due to pain in his ankles, knees and hips, that he could only walk two blocks and stand for 30 minutes at a time. [Tr. 47-49.]

The ALJ found Malott had the following severe impairments: status post kidney transplant surgeries; coronary artery disease, obesity, and depression. [Tr. 25.] The ALJ found Malott did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, app. 1. [Tr. 27-29.] The ALJ determined Malott retained the RFC to perform light work with additional non-exertional limitations, and that Malott's impairments would not preclude him from performing work that exists in significant numbers in the national economy, including work as an order clerk, production checker, and lens inserter. [Tr. 33-34.] Consequently, the ALJ found Malott was not disabled. [Tr. 34.]

## II. Discussion

The Commissioner's findings are reversed "only if they are not supported by substantial evidence or result from an error of law." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusions. *See Juszczyk v.Astrue,* 542 F.3d 626, 631 (8th Cir. 2008). "If substantial evidence supports the Commissioner's conclusions, [the Court] does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Byers*, 687 at 915.

**A. Did Malott's mental impairment meet Listing §§ 12.04 and 12.06?**

The ALJ did not err in finding Malott did not meet the criteria of Listings §§ 12.04 and 12.06. *See* 20 C.F.R. §§ 404.1520a and 416.920a. The severity standards for Listing-level impairments are high, because "the listings [for adults] were designed to operate as a presumption of disability that makes further inquiry unnecessary[.]" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). It was Malott's burden to show that he meets all of the specified criteria of a

4

Listing.  *See Boettcher v. Astrue*, 652 F.3d 860, 863-64 (8th Cir. 2011); *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

The Listings for most mental disorders consist of three parts: a set of clinical findings (paragraph A criteria); a set of functional restrictions (paragraph B criteria); and additional functional criteria (paragraph C criteria). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00. To satisfy the requirements of Listings §§ 12.04 and 12.06, which address affective and anxiety-related disorders, an individual's impairment must meet the A and B criteria, or the A and C criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04 and 12.06.[1] Malott argues that the ALJ erred because he only discussed the B criteria of the Listing and did not discuss the A criteria. However, the A criteria are not relevant unless Malott can also show that he satisfied either the B or C criteria. This is because both A and B criteria must be satisfied, or A and C criteria must be satisfied, to meet the requirements of the Listing. Satisfying the A criteria alone is never enough. Since Malott does not even argue that C applies, the Court will turn to the question of whether the ALJ erred when he found that the B criteria were not proven.

To satisfy the B criteria, a claimant's mental impairment must result in at least two of the following: marked restriction of activities of daily living, marked difficulties maintaining social functioning, marked difficulties maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. See 20 C.F.R. pt. 404, subpt.P, app. 1, §§ 12.04B and 12.06B. Malott specifically argues that the ALJ erred in finding no episodes of decompensation. See Pl.'s Br. at 23. The regulation defines "episodes of decompensation" for purposes of the Listings as:

---

[1] Although the ALJ expressly considered only Listing § 12.04, the B criteria are the same for both Listings at issue. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04B and 12.06B. Therefore, the ALJ's decision and the Court's review of that decision resolves both listings based solely on the B criteria. In addition, the ALJ considered all mental limitations regardless of the specific diagnosis in his finding with regard to the Listings and RFC. [Tr. 26-33.]

5

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.]
>
> The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

Dr. Latha Nair, a treating physician, prepared a Mental Residual Functional Capacity Assessment. [Tr. 1614-1620.] The ALJ gave the opinion less weight. [Tr. 27.] While a treating physician's opinion is generally entitled to substantial weight, the opinion "does not automatically control in the face of other credible evidence on the record that detracts from" it. *Brown v. Astrue,* 611 F.3d 941, 951 (8th Cir. 2010). The opinion may be afforded less weight when inconsistent with or contrary to other substantial evidence. *Edwards v. Barnhart,* 314 F.3d 964, 967 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (treating physician's opinion appropriately afforded less weight when inconsistent with clinical treatment notes); *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (patient's noncompliance with treatment can constitute evidence inconsistent with treating physician's opinion*); Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score may assist in formulating

RFC but is not essential to RFC's accuracy); 65 Fed. Reg. 50746-01, 2000 WL 1173632 *50764-65 (declining to endorse use of GAF scores because they have no "direct correlation to the severity requirements in our mental disorders listings"). The record as a whole contains substantial evidence supporting the ALJ's decision to give Dr. Nair's opinion less weight.

Although Dr. Nair checked a box indicating Malott would have "[m]arked" "[r]epeated episodes of decompensation, each of extreme duration" [Tr. 1617], there is nothing in the record to demonstrate the type of episodes required by the Listing. Malott had ongoing therapy and outpatient treatment at ReDiscover throughout the relevant time period, but did not have structured psychological treatment lasting two weeks every four months as in the Listing.

Dr. Nair also indicated Malott would have moderate, marked, and extreme limitations of various areas of mental functioning. [Tr. 1614-1615.] But, the ALJ explained, these opinions were not consistent with Malott's situational stressors and positive treatment outcomes [Tr. 27]; relied on symptoms that occurred when Malott was noncompliant with medications [Tr. 27]; and included periods when Malott was substantially and gainfully employed, and living independently [Tr. 32]. This is substantial evidence to discredit Dr. Nair's opinion.

The ALJ did not err in finding that Malott had no shown his mental impairments met the criteria of Listing §§ 12.04 and 12.06.

### B. Proper credibility analysis

Malott argues that in discounting the credibility of his testimony, the ALJ failed to perform a proper credibility analysis. [Doc. 9, p. 15.] Credibility is "primarily for the ALJ to decide, not the courts." *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009) (internal quotation and citation omitted). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination." *Halverson v. Astrue,* 600 F.3d 922, 931 (8th Cir. 2010) (internal quotation and

citation omitted).

The ALJ identified Malott's work history, other activities, and the objective medical evidence; and meticulously assessed Malott's testimony and allegations in light of that record as a whole. [*See* Tr. 29-31.] The ALJ articulated the inconsistencies upon which he relied in discrediting Malott's testimony regarding subjective complaints, including his observation that Malott was employed just prior to his alleged onset date, and during that time had largely the same impairments to which he now points but was able to work. [Tr. 30.] Malott lost that job, but at the time told a therapist that he lost it because he did not bring in enough business [Tr. 453], a reason unrelated to Malott's present claims of disability.

Malott also overlooks the ALJ's finding that Malott's daily activity level is not consistent with his allegations of disability. [Tr. 31.] While Malott testified that he has no ability to engage in household chores and that his girlfriend performs them, he stated in the disability application materials he filled out in January 2011 that he does perform household chores. [*Id.*] The evidence also showed that he helps take care of his girlfriend's four small children.

The ALJ gave good reasons for discrediting Malott's testimony and no reversible error appears.

**C. The RFC is proper**

Malott argues that the ALJ erred in failing to provide a "logical bridge" between the RFC limitations and specific medical evidence [Doc. 6, p. 31; Doc. 10, pp. 4-5].

The RFC formulation should include only those limitations and impairments found to be credible. *McGeorge v. Barnhart,* 321 F.3d 766, 769 (8th Cir. 2003). The RFC need not be linked to a specific medical opinion, because an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). A medical source statement

and RFC are distinct creatures:

> A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all other evidence in the case record about what an individual can do despite his or her impairment(s).

SSR 96-5p, 1996 WL 374184, at *4 (S.S.A. 1996). In other words, "a medical source statement must not be equated with the administrative finding known as the RFC assessment." *Id*. *See also Dykes v. Apfel,* 223 F.3d 865, 866-67 (8th Cir. 2000) (RFC is not proved only by medical evidence; determination is made on all record evidence).

The ALJ discussed at length the evidence related to the RFC limitations the ALJ imposed. [Tr. 29-33.] A large part of that discussion included assessment of Malott's credibility; Malott's challenge to that assessment is discussed and rejected in the preceding section. Malott additionally argues that the limitations are inadequate because Dr. Nair's opinion was not given controlling weight [Doc. 6, pp. 33-34], an argument also rejected above. Finally, although Malott argues that the RFC limitations were not sufficient, he identifies no limitations the ALJ should have imposed, except for limitations related to the need to avoid extreme cold or humidity. [Doc. 6, p. 31.] But all the positions the vocational expert identified are performed indoors. [Tr. 54.]

The ALJ's RFC is based on substantial evidence.

## III. Conclusion

For the reasons set forth above, the Commissioner's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 18, 2014
Jefferson City, Missouri

9